**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

v. CRIMINAL ACTION NO. 2:26-cr-00010

MIGUEL ANGEL AGUIRRE
MIGUEL AGUIRRE-ARELLO, SR.

**MEMORANDUM OPINION AND ORDER**

This case is the prosecution of a father-son duo who own, operate, and manage the Rio Grande Mexican restaurant in Nitro, West Virginia. On January 16, 2026, federal agents and local law enforcement raided the location while customers sat at their tables. A total of eight individuals were swept up in this operation, and some have already been convicted, sentenced, and deported. Defendants here, Miguel Angel Aguirre and Miguel Aguirre-Arello, Sr., are charged with making false statements regarding the immigration and citizenship status of four immigrant employees and harboring them while benefiting from their presence. This Memorandum Opinion and Order resolves the pending pretrial motions.

## I. BACKGROUND

On February 3, 2026, a grand jury returned an indictment of three counts against two defendants, Miguel Angel Aguirre and Miguel Aguirre-Arello, Sr., [ECF No. 24]. On March 17, 2026, a grand jury returned the Superseding Indictment of eight counts against the same defendants. [ECF No. 97].

Count One of the Superseding Indictment alleges that Defendants, aiding and abetting each other, knowingly made or subscribed as true, false statements regarding a material fact in an

application, affidavit, or other document required by federal immigration laws or regulations governing the Form I-9[1] related to Rufino Hernandez, in violation of 18 U.S.C. §§ 1546(a) and 2. [ECF No. 97, at 1–2]. Count Two alleges the same criminal conduct regarding the Form I-9 of Rosmery Morales-Mejia, in violation of 18 U.S.C. §§ 1546(a) and 2. *Id.* at 3. Count Three alleges the same regarding the Form I-9 of Rosa Shilon-Hernandez, in violation of 18 U.S.C. §§ 1546(a) and 2. *Id.* at 4. Count Four, again, alleges the same criminal conduct regarding the Form I-9 of Pablo Dominguez, in violation of 18 U.S.C. §§ 1546(a) and 2. *Id.* at 5.

Count Five is different. Specifically, Count Five alleges that Defendants, aiding and abetting each other, knowingly or in reckless disregard of the fact that Rufino Hernandez, an alien, remained in the United States illegally, did hide and harbor him from detection for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 18 U.S.C. § 2. [ECF No. 97, at 6]. Count Six alleges the same, knowingly harboring an alien, Rosmery Morales-Mejia, and benefiting from it, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 18 U.S.C. § 2. *Id.* at 7. Count Seven alleges the same, harboring the alien Rosa Shilon-Hernandez for benefit, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(B)(i), and 18 U.S.C. § 2. *Id.* at 8. Lastly, Count Eight alleges the same criminal conduct of harboring an alien for benefit, this time Pablo Dominguez. *Id.* at 9.

In addition, four individuals have been designated material witnesses in this case: Wilmar Ariosto Pablos-Miguel, Manuel Marvin Tzoc-Tzep, Rosa Shilon-Hernandez, and Rosmery Morales-Mejia.[2] After considerable motion practice, the court permitted Rule 15 depositions of

---

[1] Form I-9 is a U.S. Citizenship and Immigration Services document used to verify the identity and employment authorization of individuals hired for employment in the United States. USCIS, *I-9 Employment Eligibility Verification*, https://www.uscis.gov/i-9 (last accessed October 15, 2026).

[2] On October 8, 2026, the court granted the unsealing of motions and affidavits related to the application for material witness warrants for Pablo Dominguez, Wilmar Pablos-Miguel, Rosa Shilon-Hernandez, and Rosmery Morales-Mejia. [ECF No. 207].

these individuals except Shilon-Hernandez whose prosecution has not concluded. [ECF Nos. 60, 70, 148]. Tzoc-Tzep was a noncitizen in the United States who was not charged with any criminal conduct. [ECF No. 60]. Because the "exigencies of this case demand[ed] swift resolution" and "an uncharged witness remain[ed] in detention," the court ordered an expedited Rule 15 deposition of Tzoc-Tzep. *Id.*

After the Tzoc-Tzep deposition but before the other two, the parties separately moved to continue the trial schedule. [ECF Nos. 87, 89]. The court granted the motions, continuing the trial and related deadlines to the date requested by Defendants. [ECF No. 90].

The two other depositions permitted to be taken then followed. Pablos-Miguel and Morales-Mejia are married noncitizens who were prosecuted, convicted, and sentenced to a term of time served by this court. [ECF No. 148, at 2]; *United States v. Pablos-Miguel*, No. 2:26-cr-00011 (S.D. W. Va. Mar. 24, 2026) (Goodwin, J.) (combined plea hearing and sentencing); *United States v. Morales-Mejia*, No. 2:26-cr-00016, (S.D. W. Va. Mar. 30, 2026) (Goodwin, J.) (combined plea hearing and sentencing). Morales-Mejia was also pregnant at the time, so the court found that those circumstances justified Rule 15 depositions and expeditious removal of the witnesses to their home country. [ECF No. 148, at 2].

Many motions are pending before trial. Defendants move to suppress statements and dismiss the Superseding Indictment, [ECF Nos. 86, 124, 150]. The Government moves to seal the deposition transcripts and qualify an interpreter. [ECF Nos. 162, 221]. Defendant Aguirre moves to compel discovery, [ECF No. 164], and decide certain threshold evidentiary questions, [ECF No. 168]. Defendant Aguirre-Arello moves to exclude the Rule 15 depositions, certain immigration records, and anticipated law opinion testimony. [ECF Nos. 165, 166, 167].

The court held a pretrial motions hearing on October 14, 2026. At the hearing the parties argued the pending motions, and the court inquired over the bases for those motions. The court also granted the Government's oral motion to dismiss Counts One and Five in this action. Accordingly, those counts are **DISMISSED**, and the other six counts (Counts Two, Three, Four, Six, Seven, and Eight) remain pending against the Defendants. Trial is set for October 20, 2026.

## II. PENDING MOTIONS

### A. ECF No. 86 – Joint Motion to Suppress and Dismiss

Both Defendants move for two forms of relief: suppression and dismissal. Specifically, Defendants ask this court to

1. Suppress all evidence derived from the unlawful search warrants executed on January 16, 2026, including but not limited to all statements obtained from seized workers on and after January 16, 2026, and all evidence derived directly or indirectly therefrom, including but not limited to grand jury testimony, charging decisions, and testimonial evidence offered at trial; and
2. Dismiss the Indictment.

[ECF No. 86, at 14]. In summary, Defendants argue that the Government inappropriately seized individuals by initiating a civil immigration audit, obtaining and executing a search warrant, raiding a family restaurant, holding the seized aliens in coercive conditions, and using prosecutorial leverage to obtain statements and cooperation. [ECF No. 86]. Defendants, albeit vaguely, challenge the sufficiency of the warrant, as well as the reasonableness of the search and alleged Fourth and Fifth Amendment violations against the restaurant employees.

The Government, of course, disagrees. *See* [ECF No. 91]. First, the Government asserts that Defendants only challenge actions taken after probable cause was established to obtain a warrant, and therefore the facts supporting the probable cause determination are sufficient. *Id.* at 6–8. Second, the Government argues that however the warrants were executed is not relevant to

these Defendants because they were neither seized nor searched. *Id.* at 8–9. Lastly, the Government contends that Defendants do not have standing to challenge the alleged constitutional violations of the restaurant employees. *Id.* at 10–11.

For the reasons that follow, the motion, **[ECF No. 86]**, is **DENIED**.

1. The Warrant

To begin, the "Fourth Amendment requires that warrants be supported by probable cause." *United States v. Zelaya-Veliz*, 94 F.4th 321, 335 (4th Cir. 2024) (citing U.S. Const. amend. IV). Probable cause exists when "given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In this case, Magistrate Judge Tinsley issued a search and seizure warrant of the location of the Rio Grande restaurant owned/managed by Defendants. [ECF No. 86-2]. He found probable cause based on the affidavit of Homeland Security Investigations Special Agent Terrance Taylor, who conducted the investigation into the Rio Grande restaurant, its employees, and their authorization to live and work in the United States under the immigration code. *Id. See also* [ECF No. 86-1]. Agent Taylor issued a Notice of Inspection to the restaurant, an audit to ensure that the business employed authorized legal immigrants, and spoke with Defendant Aguirre who provided him with the relevant I-9 Forms. [ECF No. 86-1, at 10–11].

After reviewing the forms, Agent Taylor determined that six employees had either fraudulently-obtained or counterfeit identification documents, as reflected in the I-9 Forms. *Id.* And the agent identified five of those employees listed the same residential address—a house behind the restaurant owned by Defendant Aguirre. *Id.* at 14–15. Based on his experience and

knowledge, Agent Taylor believed probable cause existed that evidence of various crimes (specified in the affidavit) would be found at the restaurant. *Id.*

Magistrate Judge Tinsley agreed and issued the warrant. [ECF No. 86-2]. The Government had until January 22, 2026, to execute the warrant. *Id.* The warrant authorized the search and seizure of the "entire property" of the restaurant and the persons of identified illegal aliens. *Id.* at 3. It also authorized the seizure of items including counterfeit or fake identity documents, employment records, correspondence records, foreign identification documents, and immigration documents. *Id.* at 4. After executing the warrant, eight individuals were seized, some of whom were specifically identified in Agent Taylor's affidavit as individuals possessing or using false identification documents. *Id.* at 2; [ECF No. 86-1].

To the extent that Defendants challenge the sufficiency of the warrant, I disagree.[3] "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Here, Agent Taylor's affidavit clearly shows that probable cause supported the issued warrant. Based on his experience in immigration actions, the employment I-9 Forms provided by Defendant Aguirre and the ensuing records investigation, Agent Taylor had probable cause to believe that various immigration-related crimes were being committed. *United States v. Nelson*, 535 F. Supp. 3d 529, 553 (S.D. W. Va. 2021) (Goodwin, J.) ("The application for a warrant must include more than 'mere conclusory statements' to support a finding of probable cause." (quoting *Gates*, 462 U.S. at 239.)). *But see also United States v. Coleman*, 536 F. Supp. 3d 80, 86–89 (S.D. W. Va. 2021) (Goodwin, J.) (finding the facts relied on by the affiant officer insufficient to support probable cause and the

[3] At the October 14, 2026 pretrial motions hearing, counsel for Defendant Aguirre agreed that the warrant was facially valid.

warrant "unreasonably broad"); *Nelson*, 535 F. Supp. 3d 529 at 536 (finding "three dubious justifications" could not support the magistrate's conclusion that probable cause existed).

Accordingly, on these grounds, the motion to dismiss and suppress statements, the fruit of the warrant, is **DENIED**.[4]

2. The Execution of the Warrant

Defendants also challenge the execution of the search warrant. They assert that the masked, armed individuals conducting the raid were unreasonable under the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). Overall, reasonableness is an objective inquiry that "is evaluated by looking at the 'totality of the circumstances.'" *Case v. Montana*, 607 U.S. 107, 118 (2026) (first quoting *Barnes v. Felix*, 605 U.S. 73, 80 (2025); and then quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). And in one instance, this court has found a Fourth Amendment violation when an individual is stopped and seized by masked and unidentifiable officers. *Urquilla-Ramos v. Trump*, 821 F. Supp. 3d 603, 629–630 (S.D. W. Va. 2026) (Goodwin, J.).

As already addressed, agents conducting the search of the property were lawfully there pursuant to the warrant. Now the Defendants, who were not searched or seized in execution of the warrant, challenge its execution. That is a critical distinction. While the Fourth and Fifth Amendments guarantee broad protection to the People, those rights, at least in this context, are personal. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) ("Fourth Amendment rights are personal

[4] I also disagree that the Government is unable to pursue both civil enforcement and criminal enforcement of the nation's laws. Defendants take pains to describe the alleged civil enforcement origin of this investigation. Inasmuch as the Defendants argue that that process makes the warrant and its subsequent execution insufficient, unsupported, or unnecessary, I reject that as well.

rights which, like some other constitutional rights, may not be vicariously asserted." (collecting cases)). "It is axiomatic that 'suppression of the product of a Fourth Amendment violation can be successfully urged *only* by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.'" *United States v. Gray*, 491 F.3d 138, 144 (4th Cir. 2007) (quoting *Alderman v. United States*, 394 U.S. 165, 171–72 (1969)).

It may be that law enforcement unreasonably executed the warrant at the Rio Grande restaurant. Armed, armored, and masked officers and agents descended upon a family restaurant in the middle of the day. They questioned individuals present and seized eight individuals—not the Defendants. Those actions by the Government are sure to have struck fear into the hearts of the patrons, the staff, and the community. This, however, is not sufficient to establish standing for the Defendants.

I came to the same conclusion in a similarly shocking case. *See United States v. Westmoreland*, 982 F. Supp. 376 (S.D. W. Va. 1997). In *Westmoreland* "five to seven agents stormed" into Dr. Westmoreland's (the defendant's) waiting room where at least 15 patients, some elderly, were waiting. *Id.* at 379. At a suppression hearing, patients in the room that day testified to the "shock" of the raid, recounting how they were searched and questioned while Westmoreland's sixteen-year-old daughter cried out in the waiting room. *Id.* at 379–80. "Over thirty minutes passed before the agents allowed any patients to leave." *Id.* at 380.

Westmoreland moved to suppress the fruits of the search on four bases, including the reasonableness of the execution of the search warrant. *Id.* at 381. I quickly concluded that it was, in fact, unreasonable, and observed that it was "inexplicable why agents thought it necessary to hold between fifteen and twenty innocent citizens at gunpoint, to order them to turn and place their

hands against the wall, and to demand that they remain motionless in that position for eight minutes." *Id.*

But the analysis did not end there because despite how "outrageous" and "egregious" the search was, Westmoreland lacked standing to challenge it. *Id.* at 377–78. Instead, I found that his motion to suppress failed "as a matter of substantive Fourth Amendment law." *Id.* at 381. The problem:

> Because the agents conducted the search pursuant to a warrant, the illegality cannot arise from the fact that a search occurred. Instead, it was the manner in which agents executed the search that violated the Fourth Amendment. Yet the agents did not inflict their outrageous conduct on the defendant, but on his patients, housekeeper, and child. Westmoreland was neither present nor personally aggrieved by the unreasonable execution of the search warrant in the waiting room or in the residence.

*Id.* at 382.

Here the result is the same. The raid at Rio Grande may have disturbed the customers and the staff, but the Defendants who now challenge the execution of the search warrant were neither searched nor seized. It may be that the search uncovered evidence helpful to the Government and harmful to the Defendants, but the Defendants lack standing to challenge the execution. On that ground, the motion to dismiss and suppress must be **DENIED**.

3. Coerced Statements

Defendants also seek to suppress the statements of immigrant employees who were seized and taken to an immigration processing facility in Poca, West Virginia. Defendants assert that the Government exercised extraordinary (and impermissible) leverage over the immigrant employees to extract coerced statements while they were held for immigration processing.

Defendants' argument suffers the same flaws as its argument about the execution of the warrant. The conduct described to obtain statements, violative of the Fifth Amendment or not, is

not theirs to challenge. Just as the Supreme Court has held that the Fourth Amendment guarantees personal rights, so too does the Fifth Amendment protect the right against *self*-incrimination. *See Fisher v. United States*, 425 U.S. 391, 400–01 (1976) (discussing the personal protections of the Fifth Amendment); *United States v. Wise*, 603 F.2d 1101, 1104 (4th Cir. 1979) (holding that a defendant did not have standing to assert the violation of another's Fifth Amendment privilege).

The Fifth Amendment protects the immigrant employees from self-incrimination but it does not protect their employers. The right is private and as such the Defendants lack standing to challenge them.[5] The motion, on this ground, is **DENIED**.

4. Selective Charging

Defendants also assert that the Government's conduct here—employing criminal and civil legal pressure on the restaurant employees and charging some with crimes but not all of them—is the kind of indecent, outrageous, and conscience-shocking conduct violative of Constitutional Due Process. [ECF No. 86, at 11–14]. I disagree. I find that the actions taken in this case are within the Government's discretion, using the tools it is authorized to use—even if the result is the prosecution of poor immigrants who hoped only to live and work peacefully in this country.

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (footnote omitted).

[5] To the extent that Defendants argue that conditions of the immigrant employees establish that their statements were coerced, I disagree. At the October 14, 2026 hearing, the Defendants did not give further argument or present additional evidence on this point. Even so, there is no evidence that coercion made the employees "unreliable" such that it denies Defendants "a fair trial." *Wise*, 603 F.2d at 1104 n.3.

Here, the Government's conduct does not rise to the level of conscience-shocking, indecent, or egregious. After a seemingly thorough records investigation into the Defendants' employees, the Government could choose how and when to search, indict, and prosecute. To be sure, it is disappointing that the Government chose to spend its resources convicting restaurant workers then immediately deporting these peaceful immigrants. Nonetheless, the Government has exercised its discretion in our criminal justice system, and the Indictment cannot be dismissed on this basis. On this ground the motion is **DENIED**.

5. Cases Offered in the October 14, 2026 Pretrial Hearing

In the October 14, 2026 pretrial motions hearing, counsel for Defendant Aguirre offered additional cases, not included in his brief, that he asserted were on point: *United States v. Karathanos*, 531 F.2d 26 (2d Cir. 1976); *United States v. Ceccolini*, 435 U.S. 268 (1978); *United States v. Ramirez-Sandoval*, 872 F.2d 1392 (9th Cir. 1989); *United States v. Hernandez*, 670 F.3d 616 (5th Cir. 2012). Briefly, I will address each.

*Karathanos* is no help to the Defendants because its affirmation relies on the insufficiency of the warrant, the lack of details to support an informant's assertions, and the exclusionary rule. 531 F.2d at 30–34. Here I have already found that the warrant was sufficient. It was not based on one incredible informant, but a record investigation conduct by Homeland Security Investigations which uncovered that (1) immigration documents were fraudulent and (2) multiple immigrant employees listed the exact same residence, that is, Defendants' residence behind the restaurant.

Defendant's invocation of *Ceccolini* is similarly misplaced. In *Ceccolini*, the case came to the Supreme Court after an admittedly (and unchallenged) unconstitutional search. *435* U.S. at 273. The entire analysis of the case focuses on the attenuation between the unlawful search and a live witness's testimony at trial—exclusionary rule analysis. *Id.* at 275–76. But to offer *Ceccolini*

as instructive, Defendant *assumes* that this court will conclude an illegal search has occurred. I do not find that the search and seizure of the restaurant and its workers is unlawful. *Ramirez-Sandoval* applies an identical exclusionary rule analysis after the parties appealed suppression but did not challenge the district court's determination that an illegal search had occurred. 872 F.2d 1392, 1395–96.

In *Hernandez*, the Fifth Circuit at least addressed the use of statements against the defendant obtained in a seizure of witnesses. 670 F.3d at 623–24. The problem, as it plagues Defendant's other cases, is that the search and seizure was *illegal*, and the court then had to engage in an attenuation and inevitable discovery analysis. *Id.* Here I make no such finding that the search and seizure was unlawful.

Accordingly, these cases provide no basis to grant Defendants' Motion.

### B. ECF No. 124 – Renewed Motion to Suppress and Dismiss

In Defendant Miguel Angel Aguirre's renewed motion, [ECF No. 124], Defendant reasserts his motion to suppress statements and dismiss the indictment, [ECF No. 86], which is **DENIED** for the reasons set forth above. *Supra* II.B. In addition, Defendant asserts that "the Government's actions in seeking the superseding indictment create a presumption of vindictiveness and require the Government to demonstrate a lack of such vindictiveness." [ECF No. 124].

This motion arises from the return of the Superseding Indictment, charging Defendant Aguirre with eight counts as opposed to the original three count Indictment. Defendant argues that the following establishes a presumption of vindictiveness. According to Defendant, the Government had an objective of "rapidly removing individuals from the United States," so it used "custodial pressure of deportable immigrants to secure" testimony against Defendant Aguirre. [ECF No. 124, at 4]. On February 3, 2026, the Government unsealed a three-count indictment

against Defendant. After that, the Government sought to take Rule 15 depositions of soon-to-be deported witness, depositions which Defendant "aggressively object[ed] to." [ECF No. 124, at 5]. Defendant also "challenged the structure of the prosecution though a motion to suppress and dismiss." *Id.* The Government, as alleged by Defendant, threatened him with "increased criminal penalties by way of a superseding indictment," while also withholding grand jury transcripts until it was required to disclose them. *Id.* On March 9, 2026, Defendant sent a letter to the management of the United States Attorneys' Office "expressing [his] concerns regarding lack of evidentiary support . . . and requesting that the U.S. Attorney[s'] Office dismiss the felony charges against the restaurant owners and workers." *Id.* On March 17, 2026, the Superseding Indictment against Aguirre was unsealed, bringing additional charges and a forfeiture provision not present in the original Indictment. *Id.* at 6. Defendant asserts that the immigrant individuals named in the Superseding Indictment related to Defendant's alleged criminal conduct were "available to the Government from the outset of this prosecution" and that there is "no indication in the record that the Government discovered any new evidence between the original indictment and the superseding indictment." *Id.*

The Government denies that the return of the Superseding Indictment against Defendant is vindictive. [ECF No. 135]. The Government emphasizes that it maintains prosecutorial discretion throughout the pre-trial phase where "broad latitude exists for prosecutors to craft their cases in the public interest." [ECF No. 135, at 4–5] (citing *United States v. Goodwin*, 457 U.S. 368, 382 (1982)). Indeed, the Government asserts that the sequence of a "plea offer, [Defendant's] rejection of the plea offer, and the return of the Superseding Indictment" is the "type of pre-trial activity the Supreme Court determined is not vindictive." *Id.* at 5. The Government also refutes that the court's ruling on the motions for Rule 15 depositions affected its prosecutorial decisions

as the Government changed course and sought material witness warrants. *Id.* And regarding new discovery, the Government asserts that it "obtained new information from the . . . material witnesses," which occurred after the original indictment was returned. *Id.* at 6.

**1. Legal Standard**

"It is now well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). But to establish prosecutorial vindictiveness, "a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Id.* (citing *Goodwin,* 457 U.S. at 380 n.12). Even if a defendant cannot demonstrate direct evidence of animus, "he or she may still present evidence of 'circumstances from which an improper vindictive motive may be presumed.'" *United States v. Hill*, 93 F. App'x. 540, 545 (4th Cir. 2004) (unpublished) (quoting *Wilson*, 262 F.3d at 314). This presumption "is warranted only by circumstances posing '"a realistic likelihood of vindictiveness."'" *United States v. Villa*, 70 F.4th 704, 710 (4th Cir. 2023) (quoting *Wilson*, 262 F.3d at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974))). "When a presumption of vindictiveness is warranted, the burden shifts to the government to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315. The government may rebut that presumption by "objective information justifying the detrimental action." *United States v. Fiel*, 35 F.3d 997, 1007 (4th Cir. 1994).

Still, a "'presumption of regularity' attends decisions to prosecute." *United States v. Johnson*, 325 F.3d 205, 210 (4th Cir. 2003) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)); *see also Wilson*, 262 F.3d at 315 ("Indeed, a prosecutor's charging decision is

presumptively lawful."). And because "of the broad discretion given prosecutors and the wide range of factors that may properly be considered in making pretrial prosecutorial decisions, 'a prosecutor should remain free before trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.'" *Wilson*, 262 F.3d 305 at 315 (quoting *Goodwin*, 457 U.S. at 382).

**2. Discussion**

Here I do not find that the presumption of vindictiveness is established. The Government and Defendant were engaged in plea discussions, [ECF No. 124], but the Government's offer was rejected long before the original trial date. *Id.* Granting the motions of both parties, trial and pretrial deadlines were continued to Defendant's preferred date. Almost two weeks later the Superseding Indictment was returned. [ECF No. 97]. In the interim, the Government had deposed material witness Manuel Tzoc-Tzep. The Supreme Court has held that such pretrial conduct does not give rise to a presumption of vindictiveness. *Goodwin*, 457 U.S. at 381–82.

Moreover, Defendant's characterization of the prosecutor's negotiations is dramatized. The Government did not threaten that Defendant would be subject to further criminal charges *as a result of* his rejecting the plea offer. [ECF No. 124-2]. In fact, the possibility of a superseding indictment was present already at the time of the plea offer, a possibility the prosecutor disclosed and Defendant had notice of. *Id.* I cannot conclude that there was a "realistic likelihood of vindictiveness," when the Government clearly disclosed its intentions while offering Defendant a plea. Just because Defendant's criminal exposure increased during prosecution does not mean the Government is prosecuting him vindictively.

Therefore, Defendant's motion, [ECF No. 124], is **DENIED**.

### C. ECF No. 150 – Renewed Motion to Suppress and Dismiss

In his Renewed Motion to Suppress Witness Statements and For Dismissal of the Superseding Indictment, [ECF No. 150], Defendant Miguel Aguirre-Arello, Sr. renews the arguments made in a previous motion. *See* [ECF No. 86]. He asserts that the Superseding Indictment "does not alter the factual or legal basis for suppression." [ECF No. 150, at 1]. Because his motion does not make an additional factual or legal argument, the motion, [ECF No. 150], is **DENIED** for the reasons already stated when the court addressed his previous motion. *Supra* II.B.

### D. ECF No. 162 – Motion to Seal

On the record at the October 14, 2026 pretrial motions hearing, the court granted the Government's Motion to Seal without objection from Defendants.

Neither the Government nor Defendants would be prejudiced by sealing the deposition transcripts pending the end of trial. The public right to judicial proceedings and documents is similarly safeguarded. The sealing of deposition testimony is temporary in nature as the testimony evidence is likely to be used in the criminal jury trial, and there it will be fully accessible to the public and made part of the public record. The court is assured that the public's access to this information is well maintained while also protecting the parties' interest—and the demands of justice—in a fair trial made of jurors not already exposed to potentially inadmissible testimony. Accordingly, the motion to seal, [ECF No. 162], is **GRANTED**.

### E. ECF No. 163 – Motion to Resolve Objections in Rule 15 Depositions

On October 13, 2026, the court denied this motion as moot and ordered the parties to designate line-and-page portions of the depositions for use at trial.

### F. ECF No. 164 – Motion to Compel

Defendant Miguel Angel Aguirre moves for an order "compelling the Government to produce certain *Brady/Giglio* material, investigative notes, and grand jury transcripts, or, in the alternative, to submit the materials for *in camera* review." [ECF No. 164, at 1]. Defendant asserts that his motion is "narrow" and that he seeks only three "categories" of material:

> 1. agent notes from the January 16, 2026 custodial interviews;
> 2. agent notes, emails, text messages, and related communications concerning the investigation and witness development; and
> 3. grand jury testimony of the case agent or any other law enforcement witness who testified in support of the original indictment or superseding indictment.

[ECF No. 164, at 1]. According to Defendant Aguirre, he is entitled to this discovery because the "Jencks Act does not authorize the Government to withhold material that is independently discoverable under *Brady v. Maryland, Giglio v. United States, Napue v Illinois,* Rule 16, Rule 6(e), or the Due Process Clause." *Id.* at 2. This material, Defendant Aguirre asserts, may support or impact the Defendant's motions to suppress statements, dismiss the Superseding Indictment, exclude the Rule 15 depositions, and otherwise impeach the Government's witnesses.

In response, the Government contends that (1) it has complied "with its *Brady*/*Giglio* obligations," (2) the Jencks Act, the Federal Rules of Criminal Procedure, and the Arraignment Order in this case already govern the disclosure of witness statements without the need for an additional court order, and (3) grand jury transcripts enjoy heightened protection from discovery. [ECF No. 170, at 7]. In essence, the Government argues that Defendant Aguirre is on a fishing expedition—that is, he can only speculate what agent notes may contain, and he seeks to get a preview of the Government's case-in-chief and theory of the case. *Id.* at 10, 14.

For the following reasons, the Defendant's Motion, [ECF No. 164], is **DENIED**.

### 1. Legal Standard

"Under *Brady* and *Giglio*, 'a defendant's due-process rights are violated when the prosecution suppresses evidence "favorable to an accused" or for impeachment purposes.'" *United States v. Sandoval*, 154 F.4th 186, 199 (4th Cir. 2025) (quoting *United States v. Banks*, 104 F.4th 496, 509 (4th Cir. 2024)). "Evidence is favorable if it is exculpatory" (*Brady*) or if it could be used for impeachment (*Giglio*). *United States v. Sterling*, 724 F.3d 482, 511 (4th Cir. 2013) (first citing *Brady v. Maryland*, 373 U.S. 83 (1963) and then citing *Giglio v. United States*, 405 U.S. 150 (1972)).

Nevertheless, "*Brady* requests cannot be used as discovery devices." *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010); *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). And *Brady* does not apply when there is no "demonstration that the material sought would be exculpatory." *United States v. Crowell*, 586 F.2d 1020, 1029 (4th Cir. 1978). There is no *Brady* violation when the defendant asserts "unsupported speculation that there may have been some variance between" an agent's notes and the "report into which they were incorporated." *Id. See also Caro*, 597 F.3d at 619 ("Because [the defendant] can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be favorable to the accused.") (quotation omitted). And while *Brady* ensures due process, there is no requirement that the prosecutor "deliver his entire file to defense counsel," but only that which would, if suppressed, "deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985).

**2. Discussion**

Defendant's motion is based on speculation, and the motion is denied. Defendant seeks three broad categories of discovery but fails to show how they may be exculpatory or impeachment evidence. [ECF No. 164, at 1]. Defendant argues that "[i]f the [reports] were completed several days after the interviews occurred," and "[i]f agents took notes during the interviews," or "if the notes do not exist," he is entitled to all of that information. *Id.* at 2. This cannot be. Defendant fails to make any showing that specific information contained within any category is exculpatory or impeachment evidence.

Defendant's reply attempts to frame his request as narrow, but it suffers the same fatal flaw. It is based on the premise that there *may* be exculpatory/impeachment evidence but cannot identify what that evidence is or how it affects the Defendant. [ECF No. 171, at 3] ("[G]rand jury testimony *may* bear directly on witness statements, custody, interrogation, immigration leverage, and the Government's theory of knowledge and harboring.") (emphasis added). Seeking discovery "to the extent that testimony contains *Brady*/*Giglio* material" or "prior inconsistent statements" is the same as speculating that the material exists and fishing for exculpatory/impeachment evidence.[6] [ECF No. 171, at 2–3].

This is not to say that Defendant will never receive the materials he seeks. In fact, Defendant's motion is moot to the extent he seeks grand jury testimony, and counsel for the Defendant agreed with that on the record at the October 14, 2026 hearing. The court already granted the disclosure of Agent Terrance Taylor's grand jury testimony in this case and the six related cases.

[6] Defendant's motion under Federal Rule of Criminal Procedure 16 fails for the same reason. "A mere conclusory claim of materiality"—that pretrial disclosure of the evidence would have significantly enabled the defendant "to alter the quantum of proof in his favor"—"fails to satisfy the defendant's burden" under Rule 16. *United States v. Dugan*, 136 F.4th 162, 171 (4th Cir. 2025) (quoting *Caro*, 597 F.3d at 621).

But even reading Defendant's motion in the most charitable light, he asks the court to order the Government to comply with the law of *Brady*/*Giglio.* The Government is already under the obligation of *Brady/Giglio*, the Jencks Act, the Federal Rules of Criminal Procedure, the Local Rules, and the arraignment order. Alternatively, Defendant asks for an *in camera* review. I decline to do so. Defendant's speculation is insufficient, and an *in camera* review will only result in the court combing through the Government's materials without a specific objective. *United States v. Holmes*, 722 F.2d 37, 41 (4th Cir. 1983) ("The district court, however, generally does not know the government's theory of the prosecution nor what possible defense might be available to defendants, and thus it is unlikely that it would recognize in a general in camera search anything but the most obviously exculpatory data."). In his last alternative request for relief, Defendant asks the court to order the Government to certify that it has complied with all of its obligations. Based on the Government's representation of full compliance in its response, I find this unnecessary.

Accordingly, the Motion to Compel, [ECF No. 164], is **DENIED**.

**G. ECF No. 168 – Omnibus Motion**

In his Omnibus Motion, Defendant Miguel Angel Aguirre seeks multiple forms of relief: (1) exclusion of the Rule 15 deposition testimony, or in the alternative, resolution of all objections and an order requiring the Government to designate page-and-line portions it seeks to admit; (2) admission of favorable Rule 15 deposition testimony; (3) an order limiting improper opinion testimony regarding the Defendant's knowledge; and (4) an order limiting testimony on the non-citizenship status of non-convicted restaurant workers.

1. Rule 15 Depositions

Concerning the availability of the deposed witnesses and the appropriateness of Rule 15 depositions, Defendant's motion relitigates the court's previous rulings. The court has already

authorized the deposition of certain witnesses, who the court concluded would be reasonably unavailable by the time trial occurred. Faced with the choice between holding immigrants in this country subject to material witness warrants (which the Government sought) and permitting their deposition and return to home countries, the court held that Rule 15 depositions, although rare, were appropriate.[7] And Rule 15 depositions are proper under the Confrontation Clause. *See United States v. Smith*, 117 F.4th 584, 601 (4th Cir. 2024) ("And the Supreme Court has recognized that Rule 15 comports with the purposes of the Confrontation Clause."); *United States v. Abu Ali*, 528 F.3d 210, 238 (4th Cir. 2008) (permitting Rule 15 depositions even outside the presence of the defendant).

Still, the court will not admit "testimonial statements of a witness who did not appear at trial" unless he was unavailable and "the defendant had had a prior opportunity for cross-examination." *United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013). Defendant also argues the latter part, that he did not have an opportunity to adequately cross-examine the deponents. In essence he asserts that the failure of the Government to disclose its entire case robbed him of an appropriate opportunity to cross-examine. This is not the standard. Constitutionally adequate does not mean that the Government turns over everything it has so that a defendant may freely cross-examine. And I have already found that the Government has not violated any of its obligations to turn over additional discovery.

But the Defendant's alternative request for relief, that he be permitted to introduce as evidence portions of the depositions favorable to him, betrays his motion. The record shows that

[7] And I do not find that the Government has failed to show good faith in securing the witness's appearance. *Smith*, 117 F.4th at 602. Indeed, when initially faced with the court's denial of the Government's motion to depose witnesses under Rule 15, the Government changed course and sought material witness warrants to stay the removal of the witnesses and secure their availability for trial. But now that the witnesses have been removed from the country, it is not a failure of good faith to force them back in the country—potentially again violating civil immigration law. *Smith*, 117 F.4th at 602 ("In any event, a multi-day cross-country train ride or a chartered flight were not, in these circumstances, reasonable alternatives for the three victim witnesses.").

Defendant successfully cross-examined the deponents and elicited favorable testimony that he would like to use. This is the result of a constitutionally *adequate* process.

And in the court's October 13, 2026 Order, the court permitted the Government and the Defendants to designate and counter-designate portions of the depositions to use at trial. [ECF No. 209]. Defendants may use favorable portions of the deposition transcript, subject to objections and the court's resolution of those objections. But to the extent Defendant's motion asks the court to find the depositions wholly inadmissible, it is **DENIED**.

2. Opinion Testimony

Defendant moves this court to prematurely limit the Government's case-in-chief by ruling that any lay witness testimony cannot speak to the mental state of the Defendant. I decline to do so. To start, the motion is premature. The Defendant has not identified any specific statement the Government intends to introduce, so any order from this court would be an advisory caution to follow the rules of evidence—something that already binds the parties.

Moreover, Federal Rule of Evidence 701 provides that a lay witness may testify to that which is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(a), 701(b). And if the testimony the Government offers fits within that rule, it is permissible, subject to the other rules of evidence. The court notes, however, that "post-hoc assessments cannot be credited as a substitute for the personal knowledge and perception required under Rule 701." *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010).

As such, the motion, as it relates to opinion testimony of Defendant's knowledge is **DENIED without prejudice.** Should the Government attempt to elicit lay witness testimony inadmissible under the Federal Rules of Evidence, the court will consider objections and argument.

3. Testimony of Immigration Status

Defendant moves this court to limit the Government's evidence by excluding any testimony related to the immigration status of other restaurant employees. Defendant asserts that the evidence would confuse the jury, or at the very least, invite the jury to find Defendant guilty by association. At this time, this motion is **DENIED without prejudice.**

First, like other parts of the motion, this is premature. Defendant has not identified specific evidence or its use in support of the Government's case that Defendants specifically seeks to exclude. The generalized motion to exclude, therefore, is insufficient. To the extent that Defendant believes the evidence is prejudicial, prejudicial evidence is permitted under the Federal Rules. Fed. R. Evid. 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* Here, the Defendant has not shown that the evidence he seeks to exclude is so prejudicial or confusing that its probative value is substantially outweighed.

The court cautions the Government, however, that evidence of other non-charged restaurant workers may be cumulative or irrelevant enough to exclude if offered at trial. Five immigrant restaurant workers related to this case have admitted to their wrongdoing under the immigration code, pleaded guilty, been sentenced, and likely been deported or returned to their home country. I struggle to see what evidence is non-cumulative in the Government's prosecution as it relates to the non-convicted or non-charged restaurant workers.

**H. ECF No. 165 – Motion in Limine to Exclude Rule 15 Depositions**

Defendant Aguirre-Arello Sr.'s Motion to Exclude the Rule 15 Depositions is **DENIED** for the same reasons as Defendant Aguirre's similar motion. *Supra* II.H.1. Defendant will be subject

to the same opportunity for counter designation and use of deposition testimony, subject to objections, pursuant to the court's October 13 Order, [ECF No. 209].

**I. ECF No. 166 – Motion in Limine to Exclude Certain Immigration Records**

In his motion, Defendant Aguirre-Arello Sr. specifically invokes Federal Rule of Evidence 404 in support of excluding I-9 Forms and employment records related to restaurant workers not named in the Superseding Indictment, [ECF No. 166].

I begin by noting the blurry line between intrinsic and extrinsic evidence. Extrinsic evidence in the Fourth Circuit has been described as separate from or unrelated to the charged offense. *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996). Intrinsic evidence, on the other hand, includes those acts in the "same series of transactions as the charged offense" or those acts "necessary to complete the story of the crime on trial." *United States v. Webb*, 965 F.3d 262, 266 (4th Cir. 2020). Though intrinsic evidence may appear as impermissible prior bad acts evidence, the Fourth Circuit has allowed the admission of intrinsic evidence when it is "inextricably intertwined with the offense" and when that evidence is "essential to the story of the crime" or used to provide "context to the charged offense." *Howard v. City of Durham*, 68 F.4th 934, 955 (4th Cir. 2023).

That "test" as it is, leaves great discretion to the district court. Still, the difference is important because intrinsic evidence is not subject to FRE 404(b) limitations—and therefore likely to be admitted—whereas extrinsic evidence is subject to 404(b) and may only be admitted for another permissible.

Defendant asserts that the evidence of other individuals' immigration and employment documents, and the verification of such documents, is extrinsic "propensity" evidence and should be excluded. [ECF No. 166]. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong,

or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The Government asserts that the evidence is intrinsic and admissible, or alternatively if the court holds that the evidence is extrinsic, the Government may still use evidence for a proper purpose under Rule 404(b). Those purposes are "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The evidence of other I-9 and employment forms may indeed be evidence of uncharged conduct, but that evidence does not constitute "other crimes" under Rule 404 "if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'" *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (quoting *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994)). This is true "[e]ven where evidence predates the time period of the indictment," because the government may offer such evidence to "provide context relevant to the criminal charges." *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007).

Here, the Government alleges that Defendants aided and abetted each other in making false statements about the immigration status of their employees (four named in the Superseding Indictment) and harboring those employees for financial benefit. Evidence of other employees, although not named in the Superseding Indictment, is properly admissible to provide context, complete the story of the Defendants' scheme, and provide the jury with sufficient context. This intrinsic evidence is not subject to Rule 404.[8] As such, Defendant's Motion, [ECF No. 166], is **DENIED without prejudice**.

[8] And even if the evidence is extrinsic, the Defendant's motion still would be denied without prejudice. Federal Rule of Evidence 404(b)(2) provides multiple permitted uses for the evidence. Until trial, neither the court nor the Defendant will be able to ascertain the permitted use, should the Government choose to admit this evidence. As such, the Defendant's motion would be premature and denied.

### J. ECF No. 167 – Motion in Limine to Exclude Lay Opinion Testimony

Defendant Aguirre-Arello moves to exclude "any lay opinion testimony by Government agents or other witnesses regarding the legal requirements for completing a Form I-9, the obligations of employers under the Immigration Reform and Control Act, or the regulatory standards governing employment verification." [ECF No. 167, at 1]. Defendant further asserts that to the extent the Government intends to present such testimony at trial, "it must comply with Federal Rule of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 701, 702, and 703." *Id.* Specifically, Defendant asserts that the Government intends to elicit expert testimony by calling an immigration or homeland security agent to testify about the nature, purpose, and requirements of I-9 Forms, and because the Government has not disclosed the use of an expert under Federal Rule 16(a)(1)(G), such testimony must be excluded. *Id.* at 1–2.

In response, the Government argues that testimony "describing what the law requires – such as referencing the applicable statute, regulation, or government form – does not require specialized knowledge, skill, or expertise. Explaining I-9 requirements or identifying which documents are legally permissible to satisfy those requirements involves no methodology, analysis, or expert inference. It is simply factual description." [ECF No. 174, at 2]. The Government asserts that Federal Rule of Evidence 701 (lay opinion) is inapplicable, "let alone Rule 702" (expert opinions). *Id.*

Defendant's motion, [ECF No. 167], is **DENIED without prejudice.** Inasmuch as Defendant moves for the Federal Rules of Evidence to apply to a criminal jury trial, they already do. Fed. R. Evid. 101 ("These rules apply to proceedings in United States courts."); *see also* Fed. R. Evid. 1101 (applicability of rules). To the extent that Defendant seeks to generally exclude

testimony that he anticipates at trial, he may properly do so at trial if that testimony is presented and if the Government fails to lay an appropriate foundation for the testimony.

Nevertheless, I find that Defendant's general assertions in his motion are without merit. Under Federal Rule of Evidence 701, lay witness opinions are limited to that which is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See United States v. Walker*, 32 F.4th 377, 389–90 (4th Cir. 2022). Accordingly, the Government is permitted to offer testimony from a lay witness based on personal knowledge of the facts to which he is testifying. *United States v. Horsley*, 105 F.4th 193, 218–19 (4th Cir. 2024) ("We have previously emphasized the line between lay opinion testimony and expert testimony. 'We [have] held "lay opinion testimony *must* be based on personal knowledge."'" (quoting *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010))); *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) (Officers permissibly offered testimony "framed in terms of their eyewitness observations and particularized experience," and their observations were "'common enough and require[d] such a limited amount of expertise ... that they can, indeed, be deemed lay witness opinion[s].'" (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)); *United States v. Agyemang*, No. 99-4496, 2000 WL 1335286, at *1 (4th Cir. Sept. 15, 2000) (unpublished) (The Immigration and Naturalization Service (INS) examiner properly testified "as a lay witness about the different INS forms, files, and procedures used in the immigration context" because it was limited "to facts within her personal knowledge, which she accumulated in the course of her employment with the INS."); *United States v. Chkuaseli*, 732 F. App'x. 747, 758–59 (11th Cir. 2018) (per curiam) (A lay witness was permitted to testify that Georgian citizens needed a visa to enter the United States because it "came from his firsthand

knowledge gained through his employment experience, which required him to know when immigrants were required to have visas."); *United States v. Patel*, 400 F. App'x. 426, 434–35 (11th Cir. 2010) (The district court did not abuse its discretion in allowing government employees to give testimony "grounded in first-hand knowledge of departmental protocol and experience accumulated in the realm of immigration work."). *See also United States v. Sorensen*, 148 F.4th 992, 996–98 (8th Cir. 2025) (Internal Revenue Service (IRS) employees permissibly testified as lay witnesses about various IRS procedures, calculations, and penalties based on their "firsthand knowledge and personal experience," "industry experience," and based "on tax documents that were each admitted into evidence without objection.").

On the other hand, Rule 702 contemplates testimony offered by an expert who does not have first-hand knowledge but instead must rely on principles; methodology; data; and "scientific, technical, or other specialized knowledge" to offer an opinion. Fed. R. Evid. 702. And the parties may further test the methodology on which the expert relies. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993).

As long as the evidence is firsthand knowledge of the testifying witness, the offered evidence is not inadmissible under Rule 701. *See Johnson*, 617 F.3d 286, at 293. As standard practice, defense counsel may challenge the Government's offered evidence by objections, if there are meritorious grounds, and by cross-examination. Until specific challenged evidence is offered, the motion is **DENIED without prejudice.**

**K. ECF No. 208 – Motion to Strike Forfeiture Allegation**

Defendant Angel Aguirre moves to strike the forfeiture allegation contained in the Superseding Indictment. [ECF No. 208]. In the alternative, he moves for a "bill of particulars[,] identifying the Government's forfeiture theory as to him and an order precluding any joint-and-

several forfeiture theory[.]" [ECF No. 208]. Specifically, Defendant argues that the Government has provided no evidence of a "nexus" between himself, the property to be forfeited, and the offense. *Id.*

The court **DENIES** the motion **without prejudice.** The Notice of Forfeiture contained in the Superseding Indictment is merely a notice of the Government's intention, but the court will not take action on the forfeiture provision until the Defendants are either convicted or acquitted. Defendants are free to renew their objection at the close of the Government's case-in-chief.

### L. **ECF No. 221 – Motion in Limine to Qualify Spanish Interpreter**

The Government moves to qualify Janet Isabel McFadden as a Spanish interpreter for Pablo Dominguez, a government witness, whose primary language is Spanish. [ECF No. 221]. Defendants do not oppose the motion. The motion, [ECF No. 221], is **GRANTED**. I find that Ms. McFadden is qualified to interpret between Spanish and English. She has over 15 years of legal simultaneous and consecutive interpretation experience. She has been certified by state courts and used by federal courts alike. The interpreter is qualified and will be sworn to make true translations at the start of trial. *See* Fed. R. Evid. 604 ("An interpreter must be qualified and must give an oath or affirmation to make a true translation.").

## III. CONCLUSION

For the reasons stated above, the following motions[9] are **DENIED**: [ECF Nos. 86, 124, 150, 164, 165, 166, 167, 168, 208]. The Motion to Seal, [ECF No. 162], and the Motion to Qualify

---

[9] A review of the docket reveals that other motions remain pending despite them being resolved. As such, the Motion to Withdraw, **[ECF No. 35]**, is **GRANTED,** and Mr. Harkins shall be freed from the responsibility of representation as he appeared only at the preliminary hearing for Defendant Aguirre. The Motion for a Detention Hearing, **[ECF No. 37]**, shall be **TERMINATED** pursuant to [ECF No. 71], the detention hearing. The Motion to Quash, **[ECF No. 69]**, is **DENIED as moot.** The Motion for a Protective Order, **[ECF No. 153]**, shall be **TERMINATED** pursuant to [ECF No. 156] which denied the motion.

an Interpreter, [ECF No. 221], are **GRANTED**. Counts One and Five are **DISMISSED** pursuant to the Government's oral motion at the pretrial hearing.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendants and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: October 15, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE